UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRICK C. COTTER, IN HIS CAPACITY AS TRUSTEE OF THE LEVEL III TRADING PARTNERS, L.P. LITIGATION TRUST | * * * | Civil Action |
| | * | 15-4823 |
| v. | * * | |
| BRUCE GWYN, ANNE MARIE GWYN, ANDREW REID, GAGA, LLC, RAMPANT LEON FINANCIAL CORPORATION, | * * * | Bankruptcy |
| RARE CUTS, LLC, ORPHEUM PROPERTY, INC., TREATY ENERGY CORP., TURNKEY FUNDS, INC., KAPLAN & COMPANY, MICHAEL LAPAT | * * * * * | 13-12120 |

*************************************************

**ANSWER AND CROSS-CLAIM BY DEFENDANT BRUCE A. GWYN**

NOW INTO COURT, through undersigned counsel, comes Bruce A. Gwyn and responds to the Complaint by Patrick C. Cotter, as follows:

**FIRST DEFENSE: RULE 12(b)(6)**

The 55-page, 176-paragraph Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE: VIOLATION OF RULE 8(a)(2)**

The 55-page, 176-paragraph Complaint violates the provisions of Rule 8(a)(2) of the Federal Rules of Civil Procedure requiring "...a short and plain statement..." as to why the pleader is entitled to relief.

## THIRD DEFENSE: VIOLATION OF RULE 9(b)

The 55-page, 176-paragraph Complaint fails to meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, requiring that fraud be pled with particularity as to the circumstances constituting the fraud alleged.

## FOURTH DEFENSE: RULE 12(f)(1) MOTION TO STRIKE

The 55-page, 176-paragraph Complaint is replete with redundant, immaterial, impertinent and scandalous matters which the Court should strike *sua sponte* as to at least the following uses of meaningless invective, all conclusory and devoid of particularity:

> ambiguous, artificial, clandestine, concealed, conspired, converted, confusing, continually-changing, deceptive, deficient, depleted, divested, false, fictitious, fraudulent, grossly-inflated, hindered, improper, inaccurate, inadequate, inconsistent, inflated, incomplete, irregular, misappropriated, misleading, misrepresented, misstated, misused, obscured, over-inflated, perpetrated, problematic, prohibited, reckless, self-dealing, self-interested, sham, siphoned, systematic, under-collateralized, unanswered, uncompleted (sic), unsecured, unsupported, untimely, untrue, vague and wrongful.

## FIFTH DEFENSE: FAILURE TO COMPLY WITH PSLRA

The Complaint fails to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, Pub.L. 104-67, Stat. 737 ("PSLRA") insofar as securities fraud is alleged.

## SIXTH DEFENSE: THIRD-PARTY FAULT

The alleged damages were caused by the inability of Turnkey Hedge Funds ("Turnkey") and Kaplan & Co. ("Kaplan") to determine valuations of certain assets, resulting in Turnkey's cessation of reporting in June of 2011.

## SEVENTH DEFENSE: LACK OF *SCIENTER*

The Complaint fails to plead that defendants acted with *scienter*.

## EIGHT DEFENSE: MEADE AWARENESS

At all times, John Alden Meade, representing the interests of six "McAshan Children" was in direct contact with Turnkey representative Chris Hughes and was fully aware that Turnkey was having problems which had nothing to do with Gwyn, as set forth in Meade's March 1, 2012 letter to Hughes and Bruce Gwyn, Exhibit A[1].

## NINTH DEFENSE: FULL DISCLOSURE

At all times, all transactions were contained in the monthly statements sent by Turnkey to all members of the partnership.

---

1 At page 3, Meade complains about Hughes, **not Gwyn**:

> "How could it be that Mr. Hughes is just now acknowledging receipt of the 'December information' when has supposedly been working on the December statements since the beginning of this year - especially when considering that this work on the December statements has been cited as the basis for withholding the prior completed monthly statements?"

**TENTH DEFENSE: PRESCRIPTION AND/OR PEREMPTION**

All claims have either prescribed or are perempted.

**ELEVENTH DEFENSE: SUITABILITY AND FULL DISCRETION**

At all times, a suitability questionnaire was completed by Kenneth McAshan, establishing his suitability and providing Gwyn with full discretion over all accounts.

**TWELFTH DEFENSE: PRIVATE PLACEMENT MEMORANDUM**

At all times, a PPM was provided to all investors, disclosing all risks and factors necessary for informed decisions, advising, at Section 14:01 that Gwyn was at liberty to engage in other investment ventures[2].

**THIRTEENTH DEFENSE: INDEMNITY**

Gwyn is entitled to indemnity and a defense by defendants Orpheum Property, Inc. ("Orpheum"), Treaty Energy Corporation ("Treaty") in the following particulars:

---

[2] Each Partner acknowledges that Bruce Gwyn is the managing member of the General Partner and Trading Advisor. Each Partner acknowledges further that Bruce Gwyn may become involved with additional affiliated or unaffiliated entities. Limited Partners acknowledge that they understand that the Partnership may not be profitable and that the commonality of management of the Partnership and other additional affiliated or unaffiliated entities which Bruce Gwyn may become involved create potential conflicts of interest. The Limited Partners further acknowledge that these conflicts of interest may persist, notwithstanding significantly different investment objectives of the Partnership and any other partnership with which the General Partner (or its affiliates) may be affiliated, if the Partnership and other partnerships with which the General Partner (or its affiliates) is affiliated have funds available at the same time to invest in, or acquire, or otherwise purchase the same or similar securities, conflicts of interest may arise as to which of the entities (including the Partnership) should proceed to acquire such securities.

❑ Orpheum, because Gwyn served on the Board of the Directors of Orpheum in a non-conflicting way and is owed indemnity as a matter of law.

❑ Treaty, because Gwyn was an officer of Treaty in a non-conflicting way and is owed indemnity as a matter of law.

## FOURTEENTH DEFENSE: CROSS CLAIMS

Gwyn cross-claims pursuant to Rule 13(g) of the Federal Rules of Civil Procedure against the following parties for the following reasons:

❑ Turnkey, in that all actions by Gwyn were based on assurances by Turnkey that said transactions were permissible and should it eventuate that Turnkey was wrong, then Gwyn is entitled to judgment-over against Turnkey;

❑ Kaplan, in that all actions by Gwyn were based on Kaplan's oversight of Turnkey's assurances, and should it eventuate that Kaplan was wrong, then Gwyn is entitled to judgment-over against Kaplan;

❑ Without admitting that Lapat has any liability to the plaintiffs, Gwyn claims the right to a judgment-over against Lapat should it eventuate that Lapat did anything that he should not have done, or omitted to do something he should have done.

## FIFTEENTH DEFENSE: ANSWER TO ORIGINAL COMPLAINT

And now, defendant Gwyn responds to the specific allegations of the Complaint as follows:

1. The allegations of ¶1 require no answer.

2. The allegations of the first sentence of ¶2 are admitted; the allegations of the second sentence of ¶2 are denied; further answering,

Gwyn responds that Level III continued to actively invest in commodities futures throughout 2010 with positive results until MF Global filed for bankruptcy protection on October 31, 2011[3]; further answering as to the third sentence of ¶2, Gwyn admits that purchases of stock and other alleged transactions did occur but (i) were envisioned by the PPM, (ii) were always open, (iii) reported immediately, (iv) confirmed in monthly statements and (v) never rejected by plaintiffs until Turnkey stopped providing statements because of its inability to value certain assets held by Gaga, LLC, Basco, LLC and Doc Henry, LLC.

3. The allegations of ¶3 are categorically denied; the alleged universe of "...unwitting investors..." allegedly defrauded are not making claims in this bankruptcy, notwithstanding concerted efforts by the plaintiff to have said investors make a claim or join in the present claim; any reliance on SEC v. Reid, quoted at footnote 1, is misplaced, irrelevant and of no binding impact.

4. The allegations of ¶4 are categorically denied; all "...administrative services..." were approved by Turnkey pursuant to acceptable guidelines disclosed at all times.

5. The allegations of ¶5 are categorically denied and strict proof is required; further answering, Gwyn responds that the allegations are about allegedly "...unwitting investors..." who have made no claims, notwithstanding the plaintiff's invitation to join the present lawsuit.

---

[3] The MF Global Bankruptcy has been reported to have been the 8th largest bankruptcy in U.S. history, per the Wall Street Journal.

6. The allegations of ¶6 require no answer.

7. The allegations of ¶7 require no answer.

8. The allegations of ¶8 require no answer.

9. The allegations of ¶9 require no answer.

10. The allegations of ¶10 require no answer.

11. The allegations of ¶11 are admitted.

12. The allegations of ¶12 are admitted.

13. The allegations of ¶13 are admitted.

14. The allegations of ¶14 require no answer by this defendant.

15. The allegations of ¶15 require no answer by this defendant.

16. The allegations of ¶16 require no answer by this defendant.

17. The allegations of ¶17 require no answer by this defendant.

18. The allegations of ¶18 require no answer by this defendant.

19. The allegations of ¶19 require no answer by this defendant.

20. The allegations of ¶20 require no answer by this defendant.

21. The allegations of ¶21 require no answer by this defendant.

22. The allegations of ¶22 require no answer by this defendant.

23. The allegations of ¶23 are admitted.

24. The allegations of ¶24 are admitted.

25. The allegations of ¶25 are categorically denied; all transactions mentioned were approved by Turn Key and Lapat and all transactions mirrored the disclosures contained in the PPM.

26. The allegations of ¶26 are categorically denied and are a mere repetition of ¶¶ 2 and 3.

27. The allegations of ¶27 cite no wrongful actions; the trading described was authorized by the PPM and Turnkey, Kaplan and Lapat approved each transaction as they should have.

28. The allegations of ¶28 cite no wrongful actions and are admitted except for the last sentence, which is false.

29. The allegations of ¶29 cite no wrongful actions, but twist the truth by using words such as "siphon" "divesting" and "fraudulent scheme."

30. The allegations of ¶30 are categorically denied; the allegations are also redundant.

31. The allegations of ¶31 are admitted, except for the use of invective.

32. The allegations of ¶32 are categorically denied.

33. The allegations of ¶33 are categorically denied.

34. The allegations of ¶34 are consistent with Gwyn's demand for indemnity and judgment-over against Turn Key and Lapat; otherwise, the allegations as to Gwyn are denied.

35. The allegations of ¶35 are consistent with Gwyn's demand for indemnity and judgment-over against Turn Key and Lapat; otherwise, the allegations as to Gwyn were disclosed in the PPM.

36. The allegations of ¶36 are categorically denied; further answering, Gwyn responds that as of December, 2010, Level III had a net value of in excess $500,000 in private and public investments and in excess of $500,000 in the futures brokerage account and was hardly insolvent.

37. The allegations of ¶37 are admitted.

38. The allegations of ¶38 are categorically denied.

39. The allegations of ¶39 are categorically denied; there were never any instances of calls upon the partnership to withdraw funds that were not met until the NFA froze all accounts at the behest of

Barry Breland, a disgruntled partner who engaged in reckless claims of fraud.

40. The allegations of ¶40 are admitted insofar as low balances are concerned, a matter which is irrelevant; further answering, the NFA engaged in a 20-month investigative process which resulted in a final decision dated February 13, 2014, which made no finding against Gwyn or Level III, no admission of liability and resulted in a bar of future actions in the following language, to-wit, Exhibit B, at page 4:

> This Decision and the Offer made by L3 Management, L3 Trading and Gwyn shall bar any future MRA or ARA or BCC Complaints against L3 Management, L3 Trading and Gwyn for any conduct occurring, of which the NFA had corporate knowledge, prior to and up to the date of the Offer, and shall resolve and terminate all complaints, investigations and audits relative to L3 Management, L3 Trading and Gwyn that were received by NFA or pending as of the date of the Offer.

41. The allegations of ¶41 are admitted insofar as the NFA action served to freeze all transactions; it is further admitted that while the freeze was pending Level III and Gwyn were offered approximately $500,000 in common stock by Treaty Energy and the NFA refused to allow the transaction to take place, notwithstanding the then-liquidity of Treaty stock, Exhibit C.

42. The allegations of ¶42 require no answer by this defendant.

43. The allegations of ¶42 require no answer by this defendant.

44. The allegations of ¶44 are categorically denied as to allegations of self-dealing and wrongful conduct; further answering, Gwyn admits that he advised Lapat and Turn Key of his involvement in

all entities which were in any way included in portfolios.

45. The allegations of ¶45 are categorically denied as to the use of "fictitious", "inflated", "unsecured", "under-collateralized" and "depleting".

46. The allegations of ¶46 require no answer by this defendant.

47. The allegations of ¶47 are categorically denied.

48. The allegations of ¶48 are denied; the 2011 audit was completed with no adverse action; further answering, the 2011 audit did not "...ultimately result..." in the 2012 audit, fomented by Barry Breland as part of an ongoing vendetta with no factual or legal basis.

49. The allegations of ¶49 are categorically denied.

50. The allegations of ¶50 are categorically denied.

51. The allegations of ¶51 are categorically denied; there was no "fraudulent scheme"

52. The allegations of ¶52 require no answer by this defendant.

53. The allegations of ¶53 are categorically denied; there were no problems, inconsistencies or irregularities involved; after 2010, Kaplan was admittedly having difficulties valuing certain assets, resulting in the eventual engagement of Business Valuation Business Group, Inc. for purposes of valuing the private and public assets of the firms involved, Exhibit D[4] and Exhibit E[5].

54. The allegations of ¶54 are categorically denied and contradicted by the valuations eventually ordered by defendant Gwyn.

---

4 December 2012 *Various Interests held by Level III Trading Partners.*

5 January 2013 *Orpheum Property, Inc. and Treaty Energy Corporation.*

55. The allegations of ¶55 are categorically denied; there was no "...systematic self-dealing and fraud.

56. The allegations of ¶56 are categorically denied, except to admit that all of Gwyn's expenses were reviewed by Kaplan and Turn Key.

57. The allegations of ¶57 are categorically denied.

58. The allegations of ¶58 require no answer by this defendant.

59. The allegations of ¶59 are categorically denied; all investors were provided statements and had independent ability to request statements.

60. The allegations of ¶60 are categorically denied; no one assisted Gwyn or anyone else in "perpetuating" anything at any time.

61. The allegations of ¶61 are categorically denied, but see Exhibits D and E.

62. The allegations of ¶62 are denied; Exhibit A is the best evidence of its contents.

63. The allegations of ¶63 are denied; Exhibit B is the best evidence of its contents.

64. The allegations of ¶64 are denied.

65. The allegations of ¶65 are denied.

66. The allegations of ¶66 are categorically denied.

67. The allegations of ¶67 requires no answer from this defendant.

68. The allegations of ¶68 are categorically denied.

69. The allegations of ¶69 are categorically denied.

70. The allegations of ¶70 are denied.

71. The allegations of ¶71 require no answer by this defendant.
72. The allegations of ¶72 are categorically denied.
73. The allegations of ¶73 are admitted.
74. The allegations of ¶74 require no answer by this defendant.
75. The allegations of ¶75 require no answer by this defendant.
76. The allegations of ¶76 are denied.
77. The allegations of ¶77 are denied.
78. The allegations of ¶78 are categorically denied.
79. The allegations of ¶79 require no answer by this defendant..
80. The allegations of ¶80 require no answer by this defendant.
81. The allegations of ¶ 81 require no answer by this defendant.
82. The allegations of ¶82 require no answer by this defendant.
83. The allegations of ¶83 require no answer by this defendant.
84. The allegations of ¶84 require no answer by this defendant.
85. The allegations of ¶85 require no answer by this defendant.
86. The allegations of ¶86 require no answer by this defendant.
87. The allegations of ¶87 require no answer by this defendant.
88. The allegations of ¶88 require no answer by this defendant.
89. The allegations of ¶89 require no answer by this defendant.
90. The allegations of ¶90 require no answer by this defendant.
91. The allegations of ¶91 require no answer by this defendant.
92. The allegations of ¶92 require no answer by this defendant.
93. The allegations of ¶93 require no answer by this defendant.
94. The allegations of ¶94 require no answer by this defendant.
95. The allegations of ¶95 are categorically denied.
96. The allegations of ¶96 are categorically denied.
97. The allegations of ¶97 are categorically denied.

98. The allegations of ¶98 are categorically denied.

99. The allegations of ¶99 require no answer by this defendant.

100. The allegations of ¶100 require no answer by this defendant.

101. The allegations of ¶101 require no answer by this defendant.

102. The allegations of ¶102 require no answer by this defendant.

103. The allegations of ¶103 are denied.

104. The allegations of ¶104 are categorically denied.

105. The allegations of ¶105 require no answer by this defendant.

106. The allegations of ¶106 require no answer by this defendant.

107. The allegations of ¶107 require no answer by this defendant.

108. The allegations of ¶108 require no answer by this defendant.

109. The allegations of ¶109 require no answer by this defendant.

110. The allegations of ¶110 are denied.

111. The allegations of ¶111 are denied.

112. The allegations of ¶112 are denied.

113. The allegations of ¶113 are denied.

114. The allegations of ¶114 are denied.

115. The allegations of ¶115 require no answer.

116. The allegations of ¶116 are denied.

117. The allegations of ¶117 are categorically denied.

118. The allegations of ¶118 are denied.

119. The allegations of ¶119 require no answer.

120. The allegations of ¶120 require no answer.

121. The allegations of ¶121 are categorically denied; moreover, the allegation is deceptive in its failure to quote the disclosure statement completely, as follows:

> Although the December 2009 executive summary/disclosure document provided to investors disclosed that the fund may engage in some private investing, it states that only 0% to 10% of the fund's assets would be invested in private capitalized companies.

whereas, the correct language reads as follows:

> The primary investment objective of the Partnership is growth of capital. The business of the Partnership is buying and selling futures contracts, futures options, and any rights pertaining thereto. The Partnership shall take positions across all sectors of the futures markets, including, but not limited to, grains, financial, metals, softs, energies, meats, currencies, and stock indices. The Partnership shall purchase and sell both futures contracts and options on futures contracts in these sectors. The Partnership may also invest and trade in private securities, including privately held micro-cap companies. The general Partner (Gwyn) intends to employ an opportunistic strategy that will allow flexibility and optimum performance through the employment of various risk-management techniques. It is estimated that the Partnership will, in general, invest approximately 90% to 100% of its assets in commodity futures and 0% to 10% of its assets in private securities, *however, these percentages may be substantially more or less at the discretion of the Partnership Investment Manager* (Gwyn).

122. The allegations of ¶122 are categorically denied; moreover, the valuation reports (Exhibits D and E) confirmed that the assets had significant value in 2010 and 2011.

123. The allegations of ¶123 are categorically denied.

124. The allegations of ¶124 are admitted.

125. The allegations of ¶125 are categorically denied.

126. The allegations of ¶126 are admitted.

127. The allegations of ¶127 are categorically denied.

128. The allegations of ¶128 require no answer.

129. The allegations of ¶129 require no answer by this defendant.

130. The allegations of ¶130 require no answer.

131. The allegations of ¶131 are categorically denied; moreover, Section 14.01 fully contradicts the assertions, footnote 2, *supra.*

132. The allegations of ¶132 are categorically denied.

133. The allegations of ¶133 are categorically denied.

134. The allegations of ¶134 require no answer.

135. The allegations of ¶135 are categorically denied.

136. The allegations of ¶136 are categorically denied.

137. The allegations of ¶137 are categorically denied.

138. The allegations of ¶138 are categorically denied.

139. The allegations of ¶139 are categorically denied.

140. The allegations of ¶140 require no answer by this defendant.

141. The allegations of ¶141 require no answer.

142. The allegations of ¶142 require no answer by this defendant.

143. The allegations of ¶143 require no answer by this defendant.

144. The allegations of ¶144 require no answer by this defendant.
145. The allegations of ¶145 require no answer by this defendant.
146. The allegations of ¶146 require no answer by this defendant.
147. The allegations of ¶147 require no answer by this defendant.
148. The allegations of ¶148 require no answer by this defendant.
149. The allegations of ¶149 require no answer by this defendant.
150. The allegations of ¶150 require no answer.
151. The allegations of ¶151 are categorically denied.
152. The allegations of ¶152 are categorically denied.
153. The allegations of ¶153 require no answer.
154. The allegations of ¶154 are categorically denied.
155. The allegations of ¶155 are categorically denied.
156. The allegations of ¶156 require no answer.
157. The allegations of ¶157 are categorically denied.
158. The allegations of ¶158 are categorically denied.
159. The allegations of ¶158 require no answer.
160. The allegations of ¶160 are categorically denied.
161. The allegations of ¶161 are categorically denied.
162. The allegations of ¶162 require no answer.
163. The allegations of ¶163 require no answer by this defendant.

164. The allegations of ¶164 require no answer by this defendant.

165. The allegations of ¶165 require no answer.

166. The allegations of ¶166 require no answer by this defendant.

167. The allegations of ¶167 require no answer by this defendant.

168. The allegations of ¶168 require no answer.

169. The allegations of ¶169 are categorically denied; moreover, the valuation reports contradict the proposition that any defendant reported "...inflated values..." to investors.

170. The allegations of ¶170 are categorically denied.

171. The allegations of ¶171 require no answer by this defendant.

172. The allegations of ¶171 require no answer.

172. The allegations of ¶172 require no answer.

173. The allegations of ¶173 are categorically denied.

174. The allegations of ¶174 are categorically denied.

175. The allegations of ¶175 requires no answer.

176. The allegations of ¶176 are categorically denied.

Respectfully submitted

Henry L. Klein (7440)
844 Baronne Street
New Orleans, Louisiana 70113
(504) 301-3027
henryklein44@gmail.com