## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PATRICK C. COTTER**                                              **CIVIL ACTION**

**VERSUS**                                                                **NO. 15-4823**

**BRUCE A. GWYN ET AL.**                                        **SECTION H**

## ORDER AND REASONS

Before the Court is Defendant Kaplan & Company's Motion to Dismiss (Doc. 45). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

### I.    General factual and procedural background

This matter arises out of the failure of a "commodity pool," a type of hedge fund that trades in commodities futures contracts.  Level III Trading Partners, L.P. ("Level III" or "the Fund") was a commodity pool created in February 2007 by Defendant Bruce A. Gwyn ("Gwyn").   According to the Complaint, the Fund attracted approximately $ 2.7 million in investments from its inception in 2007 to its filing for bankruptcy in 2013.  From 2007 to 2010, the fund successfully and profitably operated as a commodity pool.

1

Beginning in 2010, however, Gwyn allegedly began divesting the fund of commodities futures and investing its assets in companies controlled by Gwyn and his close business associate, Defendant Andrew V. Reid.  The Complaint claims that "[t]his scheme involved [transfers] in the guise of loans, purchases of stock, and purchases of limited liability company membership interests."[1] These transfers were allegedly part of a larger fraudulent scheme to artificially inflate the stock prices of two public companies, Defendants Treaty Energy Corporation ("Treaty") and Orpheum Properties, Inc. ("Orpheum").  Gwyn and Reid were officers and directors of Treaty and Orpheum, and they maintained substantial financial interests in both companies.  The Complaint also claims that Gwyn misappropriated money from the fund by diverting cash for his own personal use and by improperly charging the fund for fictitious administrative services purportedly performed by Gwyn and his wife, defendant Anne Marie Gwyn.

In order to hide his self-dealing and the depletion of the fund's assets from its investors, the Complaint alleges that Gwyn disclosed false investment performance reports, false asset values, and fraudulent account statements to the fund's investors.  Many of these reports to investors were allegedly prepared and sent by Defendants Turn Key Hedge Funds, Inc. ("Turn Key") and Michael Lapat.  In addition to hiding Level III's value and the nature of its investments from current investors, Gwyn allegedly continued to accept additional investments from current investors, as well as limited partner subscriptions to the Fund from new investors looking to invest in a commodity pool.

After Level III's investors learned of the scheme, they filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code on

---

[1] Doc. 1, at 2.

August 2, 2013.[2]    The bankruptcy court later converted the matter into a voluntary petition for bankruptcy pursuant to Chapter 11.[3]  On July 11, 2014, the bankruptcy court confirmed a Chapter 11 plan for reorganization and established a "Litigation Trust."  It appointed Plaintiff, Patrick C. Cotter ("the Trustee") as the "Trustee of the Litigation Trust created by the plan."[4]  The litigation trustee represents the bankruptcy estate by assuming the obligation to prosecute the bankruptcy estate's claims for the benefit of creditors.[5]  The Chapter 11 plan in this case authorizes the trustee to bring all claims on behalf of the bankrupt debtor's estate.[6]

On September 28, 2015, Cotter filed this action in this Court in his capacity as trustee of the Level III Trading Partners, L.P. Litigation Trust. The Trustee's Complaint asserts seventeen claims for relief against eleven defendants, and he seeks to avoid various pre-petition transactions on behalf of the debtor.  The matter was initially referred to the bankruptcy court, but the referral was withdrawn on March 9, 2016.  Defendant Kaplan & Company ("Kaplan") has filed the instant Motion to Dismiss the claims against it.  Prior to addressing the merits of this Motion, this Court will discuss the Complaint's allegations involving Kaplan.

## II.    Specific allegations against Kaplan & Company

The Complaint alleges that Kaplan, a CPA firm, was retained by Gwyn at the recommendation of Defendant Turn Key to provide accounting and auditing work for the Fund.  Kaplan was responsible for preparing monthly capital and performance reports that were provided to the fund's investors. It also audited financial statements and prepared partnership tax information.

---

[2] *In re Level III Trading Partners, L.P.*, No. 13-12120 (Bankr. E.D. La. Aug. 2, 2013).
[3] *In re Level III Trading Partners, L.P.*, No. 13-12120 (Bankr. E.D. La. Oct. 1, 2013).
[4] *In re Level III Trading Partners, L.P.*, No. 13-12120, at *2 (Bankr. E.D. La. July 11, 2014).
[5] *In re Railworks Corp.*, 325 B.R. 709, 719 (Bankr. D. Md. 2005).
[6] *In re Level III Trading Partners, L.P.*, No. 13-12120, at *9 (Bankr. E.D. La. May 27, 2014).

The Complaint alleges that beginning in 2010, Kaplan had frequent problems completing its monthly reports "because of untimely, problematic, and inconsistent information and documentation" provided to it by Gwyn.  Despite these ongoing issues, Kaplan allegedly "never disclosed any of the problems, irregularities, or inconsistencies to the partnership or its limited partners."

According to the Complaint, Kaplan's responsibilities included confirming the accuracy of Turn Key's calculations of the Fund's net asset value.  In doing so, it reviewed documents relating to the entities in which the Fund had invested and therefore allegedly knew that Gwyn held an interest in or was otherwise affiliated with those entities and that the entities had no appreciable assets or performed no real business.  The Complaint alleges that Kaplan was aware of Gwyn's self-dealing and fraud. In addition, it alleges that Kaplan knew that Gwyn was using the Fund for personal expenses.

 By late 2010, Kaplan had stopped preparing monthly reports or verifying monthly partner capital account statements because it was unable to verify the value of the fund's private investments.  It sought supporting documentation from Gwyn and Turn Key to verify the Fund's net asset value but never received such.  In addition, it had difficulty preparing the annual statement for 2010 for the same reasons.  Kaplan allegedly did not at that time explain to the limited partners the reason for the delay or relay its belief that the Fund's private investments were actually worthless.

Kaplan ultimately issued the financial statements for 2009 and 2010 on October 13, 2011, stating that it was unable to verify the valuation of the investments.  These statements were not provided to the limited partners.

In light of these facts, the Trustee alleges that Kaplan aided Gwyn in misappropriating investor funds and misleading investors regarding the value of their investments.  It failed to communicate to the limited partners its

4

assessment of the value of the Fund's investments and thus assisted Gwyn in perpetuating the scheme.  The Trustee brings claims against Kaplan for (1) violation of § 10 of the 1934 Securities Exchange Act, (2) violation of state securities laws, (3) professional malpractices and negligence, (4) aiding and abetting Gwyn, (5) breach of contract, (6) civil conspiracy, and (7) misrepresentation and omission.  In its Motion, Kaplan seeks the dismissal of each of these claims.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[7] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[8] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[9]  The court need not, however, accept as true legal conclusions couched as factual allegations.[10]  To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[11]  If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[12]  The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[13]

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[8] *Id.*
[9] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[10] *Iqbal*, 556 U.S. at 678.
[11] *Id.*
[12] *Lormand*, 565 F.3d at 255–57.
[13] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

## LAW AND ANALYSIS

This Court will consider each of Kaplan's arguments in turn.

## I. **Breach of Contract**

At the outset, Kaplan argues that the Trustee cannot succeed on its breach of contract claim. It argues that Louisiana law applies to this claim and that under Louisiana law allegations that an accountant breached its duties sounds in tort, not contract. The Trustee rebuts that it is impossible for the Court to engage in a fact-intensive choice of law analysis at this stage.

While the parties dispute which choice of law provision applies to this claim, this Court agrees with the Trustee that Louisiana Civil Code article 3537, which specifically addresses which law applies to issues of conventional obligations, applies here.[14] Article 3537 states that:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

---

[14] 24 LA. CIV. L. TREATISE, SALES § 1:12 ("Article 3515 acts as the general and residual article applicable '[e]xcept as otherwise provided.' Most of the remaining articles in Book IV do in fact displace article 3515 by providing narrower and more specific rules adapted to particular substantive areas of law.").

This Court agrees with the Trustee that such a determination at this stage would be premature. This Court has not been provided with sufficient facts to engage in the analysis mandated by article 3537. For instance, the Complaint does not provide any information regarding the negotiation or formation of the contract between Kaplan and Level III, nor has the contract been provided to this Court for consideration. For these reasons, Kaplan's request for dismissal of the Trustee's breach of contract claim is denied.

## II.  Peremption of Tort Claims

Kaplan next argues that the Trustee's claims sounding in tort, such as those for malpractice, misrepresentations, and breach of fiduciary duty, are perempted. It argues that Louisiana law applies, and under Louisiana law, claims against accountants are subject to two peremptive periods set forth in Louisiana Revised Statutes § 9:5604, which states that:

> No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Applicability of Louisiana law aside, this Court is unable to make a determination regarding the passing of peremption without a factual determination regarding when the claim arose. Even Kaplan points out that "Plaintiff's Complaint fails to point to a specific action or date on which Kaplan allegedly committed an action or omission which would form the basis of Plaintiff's" claims. In addition, it is not clear when Plaintiff should have been

aware of the claim.  Kaplan argues that certainly the Plaintiff should have been on notice of its claim against Kaplan by June 12, 2012 when the National Futures Association ("NFA") took emergency action against Level III and Gwyn.  The Trustee points out, however, that nothing in the NFA's notice suggests that Kaplan was engaged in any wrongful conduct.  Regardless, a finding of when Plaintiff should have discovered his claim against Kaplan is a factual determination inappropriate for resolution at this stage.  Accordingly, this Court cannot say that Plaintiff's claims are perempted by Louisiana's one-year peremptive period.

Likewise, this Court does not find that Plaintiff's claims are perempted by the three-year period.  As Kaplan points out, the Complaint alleges that Kaplan stopped providing accounting services for the Fund in June of 2012. The bankruptcy proceeding began on August 2, 2013, and, on October 1, 2013, the Trustee was given an additional two years within which to bring any claims that were actionable at the time of the filing of the bankruptcy.[15]  Accordingly, the Trustee's claims are likewise not perempted on the face of the Complaint by the three-year period.

## III.   Accountant Review Panel

Kaplan next argues that the claims alleging that it breached its duties of professional care are premature because they have not yet been submitted

---

[15] *See, e.g.,* 11 U.S.C. § 108; *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, 2011 WL 860529, at *11 (W.D. Tex. Mar. 8, 2011) (gathering cases); *Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 519 (5th Cir. 2009) ("Congress drew no distinction among the state law vehicles that govern time limits for filing suit, whether statutes of limitations or prescription, repose or peremption. The language of Section 108(a) compels the conclusion that Congress expressly extended the time for pursuing any action that would otherwise be time-barred under state law.").

to a public accountant review panel.  Louisiana Revised Statutes § 37:105(a) states that:

> [N]o action against a certified public accountant or firm or his insurer may be commenced in any court before the claimant's request for review has been presented to a public accountant review panel established pursuant to this Part and the panel has issued a written opinion. Compliance with the requirements of this Part is not to be deemed optional.

Kaplan argues that this law is procedural and this Court must therefore apply it to this matter regardless of which state's substantive law applies.  The Trustee rebuts on two grounds.  First, he argues that the law is substantive, not procedural, and that since Illinois substantive law applies to this dispute, it is inapplicable here.  Second, he argues that even if Louisiana law applies, he is not required to comply with this statute because Kaplan is licensed in Illinois, not Louisiana.

At the outset, this Court agrees with the Trustee that the accountant review panel requirement is a substantive law.[16]  As a result, the accountant review panel requirement applies only if Louisiana substantive law applies to the Trustee's claims against Kaplan.   The choice of law for claims of professional malpractice are determined by Louisiana Civil Code article 3543, which states that:

> Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.

---

[16] *See Seoane v. Ortho Pharm., Inc.*, 472 F. Supp. 468, 471 (E.D. La. 1979), aff'd, 660 F.2d 146 (5th Cir. 1981) ("The federal courts which have considered this question, with one exception, have concluded that medical malpractice review panel provisions of state laws are substantive rules of law of the forum which must be applied by a federal court in a diversity case."); *Thompson v. Ackal*, No. 15-02288, 2016 WL 1394352, at *14 (W.D. La. Mar. 9, 2016), report and recommendation adopted, No. 15-02288, 2016 WL 1391047 (W.D. La. Apr. 6, 2016).

> In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state.
>
> The preceding paragraph does not apply to cases in which the conduct that caused the injury occurred in this state and was caused by a person who was domiciled in, or had another significant connection with, this state. These cases are governed by the law of this state.

The conduct that caused the alleged injury—Kaplan's malpractice and breach of professional duties—occurred at its offices in Illinois. The injury was felt by Level III and its investors in Louisiana. Therefore, the law of Illinois applies only if the law of Louisiana does not provide for a higher standard of conduct. "In Illinois, the established standard of care for all professionals is stated as the use of the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances."[17] Similarly, in Louisiana accountants are obligated to exercise at least the degree of care, skill, and diligence that is exercised by prudent practicing accountants in their locality.[18] Since Louisiana does not require a higher standard of conduct for accountants than Illinois, Illinois law applies to Plaintiff's professional malpractice claims. Louisiana's accountant review panel law is therefore inapplicable to this case. Plaintiff's motion is denied with respect to these claims.

## IV.   Aiding and Abetting

Plaintiff's Complaint alleges that Kaplan is liable for aiding and abetting the breaches of fiduciary duty, breaches of partnership agreement, and

---

[17] *Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1020 (Ill. 1996).
[18] *Gantt v. Boone, Wellford, Clark, Langschmidt & Pemberton*, 559 F. Supp. 1219, 1227 (M.D. La. 1983), aff'd sub nom. *Gantt v. Boone, Wellford, Clark*, 742 F.2d 1451 (5th Cir. 1984).

conversion of partnership property committed by Level III and Gwyn.  Kaplan argues that there is no cause of action for aiding and abetting under Louisiana law, and these claims should therefore be dismissed.  This Court agrees that Louisiana does not recognize an independent cause of action for aiding and abetting;[19] however, Illinois law applies to these claims just as it does to Plaintiff's professional malpractice claims.  Under Louisiana Civil Code article 3543, Illinois law will apply unless Louisiana law provides for a higher standard of conduct.  Louisiana law does not recognize an independent cause of action for aiding and abetting.   "If Louisiana law does not provide a cause of action for aiding and abetting breach of fiduciary duty, then the law of the place of the conduct prescribes a higher standard of conduct and would apply for that reason."[20]  Accordingly, Illinois law applies to Plaintiff's aiding and abetting claims.  Illinois law specifically provides for the cause of action of aiding and abetting.[21]   Kaplan's argument for dismissal of Plaintiff's aiding and abetting claims therefore fails.

## V.     Securities Exchange Act Claims

In his Complaint, the Trustee alleges that Kaplan has violated § 10 of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5.  "Congress enacted § 10(b) to insure honest securities markets and thereby promote investor confidence."[22]  Section 10(b) makes it unlawful for a person to:

> use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in

---

[19] *Thomas v. N. 40 Land Dev., Inc.*, 894 So.2d 1160, 1174 (La. App. 4 Cir. 2005) )  ("Absent a conspiracy, Louisiana law does not recognize a distinct cause of action for aiding and abetting.").
[20] *Babin v. Caddo E. Estates I, Ltd.*, 517 B.R. 649, 654 (E.D. La. 2014).
[21] *See Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 1 Cir. 2003).
[22] *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1075 (2014).

contravention of such rules and regulations as the [U.S. Securities and Exchange Commission ("SEC")] may prescribe as necessary or appropriate in the public interest or for the protection of investors.[23]

The SEC, pursuant to this section, promulgated Rule 10b–5, which provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[24]

"To state a claim based on conduct violating Rule 10b–5(a) and (c), [a] plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance."[25]  In order to state a claim under Rule 10b–5(b) the Trustee must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.[26]

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C § 78u *et seq.*, requires heightened pleading standard for plaintiffs

---

[23] 15 U.S.C. § 78j(b).

[24] 17 C.F.R. § 240.10b–5.

[25] *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. H-01-3624, 2006 WL 6892915, at *3 n.8 (S.D. Tex. Dec. 4, 2006).

[26] *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1207 (2013).

bringing private securities fraud actions.[27]  The PSLRA provides two distinct pleading requirements, both of which must be met in order for a complaint to survive a motion to dismiss.[28]  First, under 15 U.S.C. § 78u–4(b)(1), the complaint must specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity.  Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[29]

Kaplan argues that Plaintiff cannot succeed in its securities claims against it because he has failed to allege the misstatements or omissions with particularity, has failed to allege the requisite scienter, and has failed to allege reliance.[30]  This Court will consider each argument in turn.[31]

### 1.    Particularity

Kaplan argues that the Complaint fails to point to any specific misrepresentation or omission or allege which private placement memoranda contained the statement.  The Trustee responds with numerous instances in the Complaint in which he points out specific misrepresentations made by Kaplan.  For instance, the Complaint alleges that Kaplan misrepresented the value of the Fund to its investors in monthly statements, performance reports,

---

[27] *SEC v. Blackburn*, No. 15-2451, 2015 WL 9459976, at *6 (E.D. La. Dec. 28, 2015).

[28] *See Lormand*, 565 F.3d at 239; 15 U.S.C. § 78u–4(b)(3)(A).

[29] 15 U.S.C. § 78u–4(b)(2).

[30] The following analysis likewise applies to Kaplan's argument that Plaintiff has failed to adequately plead scienter, reliance, or with particularity his claims of misrepresentation or omissions.

[31] In its reply, Kaplan argues for the first time that Plaintiff's federal securities claims are prescribed by 28 U.S.C. § 1658.  However, "[i]t is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 Fed.Appx. 307, 315 (5th Cir. 2008).  Accordingly, this Court declines to address those arguments.

and financial statements sent in 2010 and 2011. This Court agrees that these assertions are sufficient to satisfy the heightened pleading standard.

### 2. Scienter

Next Kaplan argues that the Complaint fails to establish the requisite scienter. A plaintiff may satisfy the heightened scienter pleading requirement by alleging facts showing a motive to commit fraud and a clear opportunity to do so, or by identifying circumstances indicating conscious or reckless behavior, so long as the totality of allegations raises a strong inference of fraudulent intent.[32] "To adequately plead recklessness as the basis for scienter as to an auditor, a plaintiff must show 'conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care,' and that 'approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company.'"[33] "With regard to sufficiently alleging scienter against auditors, courts have held that in assessing the totality of the circumstances the following may each contribute in supplying an inference that an auditor performed a reckless or fraudulent audit: 1) red flags regarding accounting matters, 2) restated financial statements, 3) an auditor's failure to obtain sufficient support for account balances, and 4) an auditor's failure to follow-up on known accounting errors."[34] "The fact that an auditor ignored red flags constitutes strong evidence of intentional or reckless conduct."[35] "A 'red flag' is a sign consciously disregarded by the auditor that 'would place a reasonable

---

[32] *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, No. 13-3935, 2015 WL 7454598, at *9 (E.D. La. Nov. 23, 2015) (Vance, J.) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

[33] *Levy v. Maggiore*, 48 F. Supp. 3d 428, 458 (E.D.N.Y. 2014).

[34] *In re Fleming Companies Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *37 (E.D. Tex. June 16, 2004).

[35] *Id.*

auditor on notice that the audited company was engaging in wrongdoing to the detriment of its investors.'"[36]

Kaplan alleges that the only possible red flag identified by Plaintiff's Complaint is the Fund's 2010 shift from commodities trading to almost entirely private investments in light of the December 2009 disclosure statement which stated that only 0 to 10% of the fund assets would be invested in private companies.  Kaplan points out that the disclosure statement also states that the 0 to 10 "percentage may be substantially more or less at the discretion of the Partnership's Investment Manager."  Kaplan argues that it "cannot be said to have 'disregarded' the 'red flag' of Bruce Gwyn moving the [F]und toward a majority of private investments as such action was authorized" by the disclosures provided to investors.

Plaintiff's response, however, points to several other red flags identified by his Complaint. Namely, the Complaint describes "frequent and detailed questions relating to problems, inconsistencies, and irregularities" identified by Kaplan in auditing Level III's accounting and bank records; Kaplan's knowledge that Gywn had an interest in many of the entities in which the Fund invested and that many of those entities had no assets or performed no real business; Kaplan's knowledge that Gwyn regularly used the Fund's cash for personal expenses; Gwyn's inability to furnish sufficient documentation to explain expenses or answer Kaplan's questions; and Kaplan's knowledge that no side pockets had been established for the investments and that redemption requests were being met based on the inflated values assigned to the investments.  Plaintiff alleges that these suspicious acts were sufficient to put Kaplan on notice of Gwyn's wrongdoing but that Kaplan failed to do anything to alert investors to these red flags.   Instead, Plaintiff alleges, Kaplan

---

[36] *Levy*, 48 F. Supp. 3d at 459.

continued to issue reports even if all of its questions had not been answered. Plaintiff identifies Kaplan's motive as its partnership with Defendant Turn Key. Plaintiff's allegations, which are outlined in significant detail in the Complaint, give rise to a strong inference of scienter that is at least as compelling as any opposing inference that one could draw from the facts alleged. Even if Kaplan did not intentionally engage in deceptive conduct, the allegations are sufficient to indicate reckless disregard in reporting false information to investors. Defendants' argument that the Trustee failed to meet the heightened pleading requirements for scienter therefore fails.

### 3.    Reliance

Finally, Kaplan argues that the Plaintiff has failed to adequately allege that investors relied on its misrepresentations or omissions in investing in Level III. This Court disagrees. As Plaintiff points out, his Complaint expressly alleges that Kaplan prepared financial reports and statements, private placement memoranda, and disclosure documents for the benefit of investors and potential investors and that Kaplan knew that investors would rely on that information in deciding whether to invest in Level III. These statements allegedly grossly inflated Level III's value, causing investors to rely on them to their detriment.

Accordingly, Kaplan's arguments seeking the dismissal of Plaintiff's claims under the Exchange Act fail.

## VI.    State Law Securities Claims

Kaplan next argues that Plaintiff's state securities law claims, under Louisiana, Florida, Alabama, and Illinois law, fail as a matter of law. Plaintiff does not oppose the dismissal of his claims under Florida or Illinois law. Accordingly, this Court will consider only the viability of his claims under Louisiana and Alabama law.

### 1. Louisiana

First, Kaplan argues that it is not a "seller" under the terms of Louisiana Revised Statutes § 51:712(a)(2), which states that:

> It shall be unlawful for any person [t]o offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

Both parties rely on *Solow v. Heard McElroy & Vestal LLP* to support their position.[37]  In *Solow*, the Louisiana Second Circuit Court of Appeal stated that "merely participating in the events leading up to the transaction is not enough to make one a seller."[38]  It goes on to suggest that a defendant may be liable as a "seller" if its participation in the transaction was a substantial factor in causing the sale to take place.[39]  The court ultimately found that the defendant, an accounting firm, was not a seller because it had not authorized the dissemination of its draft audit opinion and its involvement in the transaction was limited to a review of the sale agreement and due diligence reports.[40]  The court held that: "There is no evidence to support the claim that [the accounting firm] offered to sell or sold securities or was a substantial factor in the sale . . . . [The accounting firm] had no contact with [the seller] and was not involved with the negotiations between [the parties]."[41]  The Louisiana Supreme Court, however, "has not addressed the issue of whether liability under La. R.S.

---

[37] *Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So. 3d 1269 (La. App. 2 Cir. 2009).
[38] *Id.* at 1281.
[39] *Id.*
[40] *Id.*
[41] *Id.*

51:712A extends to one who is shown to be a substantial factor in bringing about the sale of securities."[42]

Kaplan argues that, like the accounting firm in *Solow*, it was not involved with the negotiations or sales of interests in Level III and therefore cannot be said to be a seller.  Plaintiff rebuts that *Solow* indicates that in considering whether an accounting firm was a substantial factor in a sale, a court should look to "whether the auditor authorized use of its reports and statements in public filings and had contact with potential investors."[43] Plaintiff points to the allegations of its Complaint that Kaplan either provided its reports to potential investors or knew that they were being provided to potential investors and that potential and existing investors purchased interests in Level III in reliance on those statements.  This Court agrees that such allegations are sufficient to state a claim under Louisiana Revised Statutes § 51:712(a)(2).  Indeed, the determination of whether Kaplan was a "seller" is a finding of fact inappropriate at this stage.

Kaplan next argues that it cannot be liable under Louisiana Revised Statutes § 51:714(b) because it is not a "control person."  Section 714(b) states that:

> Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is

---

[42] *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2016 WL 5799298, at *14 (M.D. La. Sept. 30, 2016).
[43] Doc. 53, p.33.

> alleged to exist. There is contribution as in the case of contract among several persons so liable.

For purposes of this statute, "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[44]  Kaplan argues that it did not have the power to direct Level III's actions, and it therefore cannot be considered a control person.

Plaintiff argues that his allegations are sufficient to support a claim for control person liability in light of *Heck v. Triche*.[45]  In *Heck*, the Fifth Circuit looked to federal law for instruction on who constitutes a control person.[46] Plaintiff points to its holding that an accountant could be held liable as a control person when he prepared a prospectus used to solicit investments in which he omitted the financial condition of the company's creator or that the creator could pledge the company's inventory to an entity with a priority lien.[47] This case is easily distinguishable from the issue here, however.  The Fifth Circuit went on to say that the accountant's involvement in the sale of the investments in the company, Antique Investment Group, LLC ("AIG"), "went far beyond" mere auditing services.[48]  The Fifth Circuit noted that the company's creator "would not have created AIG, solicited investments, or pledged the inventory promised to the investors to First Bank without [the accountant's] instruction or approval."[49]  No such facts have been alleged regarding Kaplan's involvement in the sale of interests in Level III.  *Heck* does

---

[44] La. Rev. Stat. § 51:702.
[45] *Heck v. Triche*, 775 F.3d 265 (5th Cir. 2014).
[46] *Id.* at 283.
[47] *Id.*
[48] *Id.* at 285.
[49] *Id.*

not stand for the proposition, as Plaintiff suggests, that merely creating false or misleading documents regarding the financial situation of a company is sufficient to create control person liability.  Plaintiff has not provided the Court with any other case to support its argument for control person liability against Kaplan.  Accordingly, Plaintiff's claims under Louisiana Revised Statutes § 51:714(b) are dismissed.[50]

### 2. Alabama

Kaplan next argues that Plaintiff cannot succeed on his claim under Alabama's securities law, which states that:

> Every person who directly or indirectly controls a person liable under subsections (a) or (b) of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every dealer or agent who materially aids in such conduct is also liable jointly and severally with and to the same extent as the person liable under subsection (a) or (b), unless he is able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.[51]

Kaplan argues that the Complaint does not support a claim that it materially aided in selling interests in Level III.  The Alabama Supreme Court has established that the phrase "materially aids" expands "liability to groups of persons beyond the [actual] seller of the security."[52]  It also held that "the test for 'materially aiding' in the sale of securities is less stringent than whether

---

[50] Kaplan also argues that, to the extent that Plaintiff is asserting a claim under Louisiana Revised Statutes § 51:712(d), no cause of action for civil liability under that statute exists. Plaintiff has confirmed that it is not pursing a claim under that statute.
[51] Ala. Code § 8-6-19.
[52] *Foster v. Jesup and Lamont Securities Co., Inc.*, 482 So.2d 1201, 1206 (Ala.1986).

the entity was a 'substantial factor' in the sale of such securities."[53]  This Court has already held that Plaintiff's allegations are sufficient to state a claim under a substantial factor test.  Accordingly, it likewise holds that the allegations of the Complaint are sufficient to state a claim under Alabama's more lenient standard.

## VII.   Civil Conspiracy Claims

Kaplan argues that Plaintiff cannot succeed on his civil conspiracy claims because he has not adequately plead an underlying tort or wrong.  However, this Court has previously declined to dismiss Plaintiff's claims of professional malpractice and breach of contract.  Accordingly, Plaintiff's claim of civil conspiracy is properly supported by those underlying claims.

## VIII.   Breach of Fiduciary Duty

Finally, Kaplan argues that Plaintiff's breach of fiduciary duty claim should fail because the law does not recognize a fiduciary relationship between an auditor and its client.  This Court has already held that Illinois law applies to claims involving Kaplan's standard of conduct pursuant to Louisiana Civil Code article 3543 unless the law of Louisiana provides for a higher standard of conduct.  The parties agree that Louisiana law does not recognize a fiduciary duty between an accountant and its client and therefore does not provide for a higher standard of conduct.  Therefore, Illinois law applies to Plaintiff's breach of fiduciary claim.

Illinois law recognizes a fiduciary duty between an auditor and his client under some circumstances.  While an auditor-client relationship typically does not establish a fiduciary duty, "fiduciary duties are sometimes imposed on an

---

[53] *San Francisco Residence Club, Inc. v. Park Tower, LLC*, No. 5:08-CV-1423-AKK, 2012 WL 8169890, at *7 (N.D. Ala. Jan. 12, 2012) (citing *Foster*, 482 So.2d 1201).

ad hoc basis."[54]  "If a person solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him, a fiduciary relation is established."[55]   In *McMahan v. Deutsche Bank AG*, on which Plaintiff relies, the Northern District of Illinois held that the plaintiff had alleged a claim for breach of fiduciary duty against his accounting firm when "[t]he fiduciary relationship was based on Plaintiffs' long-term relationship with [his CPA], and the fact that [the CPA] advised Plaintiffs to participate in, and vouched for the legitimacy of, a complex tax-shelter scheme."[56]  Plaintiff argues that, here too, Kaplan's relationship with Level III was more than that of an annual auditor.  He points out that Kaplan was continuously involved with Level III through "monthly accounting and preparation of partner capital reports and fund performance reports."  This Court holds that such allegations are insufficient to establish a fiduciary relationship between Kaplan and Level III.  Plaintiff does not make any allegations supporting a finding that Level III put its trust in Kaplan to advise it on its financial decisions.  Indeed, there are no allegations that Kaplan advised Level III in any capacity.  Accordingly, Plaintiff's breach of fiduciary duty claim fails.

## CONCLUSION

For the foregoing reasons, Kaplan's Motion is GRANTED IN PART. Plaintiff's claims under Louisiana Revised Statutes § 51:714(b) and for breach of fiduciary duty are DISMISSED WITHOUT PREJUDICE.  In addition, Plaintiff's claims under Florida and Illinois securities law are DISMISSED

---

[54] *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992), as amended on denial of reh'g (May 1, 1992).
[55] *Id.*
[56] *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805 (N.D. Ill. 2013).

WITH PREJUDICE.  Plaintiff shall amend his Complaint within 20 days of this Order to the extent that he can remedy the deficiencies identified herein.


New Orleans, Louisiana this 13th day of February, 2017.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**